# Pittsburg Sheet Manufacturing Company *v.* West Penn Sheet Steel Company.

*Principal and agent—Power of agent to make sales.*

A contract of employment between a steel company and a salesman provided substantially that the salesman should enter the service of the company and secure such orders as were suitable in character and size for its mill; that he was to sell to none except such as were in good standing, and that all sales made by him were to be in the name of the steel company; that in consideration of his services, he was to be paid a commission on the gross amount of such sales; that settlements were to be made monthly for commissions on all orders that he should secure; and that the prices should be carefully considered, and the minimum or average selling price should be agreed to by the company. The agreement contained no express limitation that orders should be subject to the ratification or approval of the company. *Held,* that the salesman had the power to bind his employer by an absolute contract of sale with a person in good financial standing.

Argued Oct. 9, 1900. Appeal, No. 134, Oct. T., 1900, by plaintiff, from order of C. P. Armstrong Co., March T., 1900, No. 53, refusing to take off nonsuit in case of Pittsburg Sheet Manufacturing Company v. West Penn Sheet Steel Company. Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Reversed.

Assumpsit on a contract of sale. Before PATTON, P. J.

The facts are fully stated in the opinion of the Supreme Court.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was in refusing to take off nonsuit.

*S. B. Schoyer*, with him *S. Schoyer, Jr.*, and *D. B. Heiner*, for appellant.—The court below introduced an arbitrary limitation of authority where no express limitation existed: Bridgewater Gas Co. v. Home Gas Fuel Co., 16 U. S. App. 569; Zalezki v. Clark, 44 Conn. 220.

Where instructions are reasonably susceptible of two different meanings and the agent in good faith adopts one of them, the principal cannot assert the contrary as against his agent or the third person who in good faith and without negligence, has relied on the same construction: Oxford Lake Line v. National Bank of Pensacola, 9 Am. & Eng. Corp. Cases, N. S. 480; Mabray v. Goodfellow Shoe Co., 73 Mo. App. 1; McConn v. Lady, 10 W. N. C. 493.

*M. F. Leason*, for appellee.—The rule that an authority in a drummer to take orders was not an authority to make sales, was applied and affirmed in Bensberg v. Harris, 46 Mo. App. 404. See also Diversy v. Kellogg, 44 Ill. 114, Tarpy v. Bernheimer, 42 N. Y. St. Rep. 184, Pratt v. Patterson, 7 Phila. 135, and Seiple v. Irwin, 30 Pa. 513.

OPINION BY MR. JUSTICE POTTER, January 7, 1901:

The plaintiff sued the defendant company to recover damages for failure to deliver steel in pursuance of a contract made in the name of the defendant company by B. F. Jennings, claiming to act as its general sales agent. The case turns upon the rightful authority of Jennings to so act.

It appears that upon February 22, 1899, Jennings made a proposition in writing in the name of the defendant to sell to the plaintiff, the Pittsburg Sheet Manufacturing Company, 700 tons of soft sheet steel for shipment, as specified, during the ensuing March, April and May. Before accepting the proposi-

tion the plaintiff inquired as to the authority of Jennings, and was by him shown the contract of employment between himself and the defendant company, which was as follows:

"This agreement made this 27th day of December, 1898, between the West Penn Sheet Steel Company of Leechburg, Pa., and Benj. F. Jennings, of the city of Allegheny, Pa.

"Witnesseth: That the said Benj. F. Jennings will enter the service of said West Penn Sheet Steel Co. and secure such orders as are suitable in character and size for their mill, and in pursuance of said duty will visit such cities as may be mutually agreed upon.

"That he will report such information as he may secure as to the mercantile standing of such customers, and as nearly as may be keep the said steel company advised as to where he is and his address at such places.

"That he will endeavor to sell to none except such as may be as nearly as can be ascertained of good mercantile standing, also that all sales so made by him shall be in the name of said West Penn Sheet Steel Co.

"That in consideration of the above, the West Penn Sheet Steel Co. shall pay to the said Benj. F. Jennings his necessary traveling and hotel expenses and five per cent commission on the gross amount of such sales, except when he may secure orders from such parties as the said West Penn Sheet Steel Co. are now selling to, or now may have orders from. In this case said Benj. F. Jennings shall receive a commission of two per cent on the gross amount of said sales, so secured.

"That said West Penn Sheet Steel Co. shall send to Marion F. Jennings, 152 Fayette Street, Allegheny, Pa., one hundred and fifty dollars ($150) per month payable semimonthly, viz: the first and fifteenth (1st and 15th) of each month on account of said commissions.

"That all settlements shall be made monthly for commissions on all orders that said Benj. F. Jennings shall secure.

"That the said West Penn Sheet Steel Co. agrees to make all sheets carefully to gauges, and in a mercantile and salable condition.

"That this agreement shall continue in force until April 1st

next, after which time it may be terminated upon ten (10) days' written notice upon the part of either party hereto.

" That the prices for which such steel shall be sold shall be carefully considered by the parties hereto at such times as may be advisable, and the minimum or average selling price shall be agreed to by the said West Penn Sheet Steel Co.

" Signed and delivered as witness our hands and seals this 27th day of December, 1898.

" WEST PENN SHEET STEEL CO.,
" Witness :  JOS. G. BEALE, President.
" W. B. HOWARD.  BENJ. F. JENNINGS."

Being apparently satisfied by the inspection of this agreement and the verbal assurances of Jennings that he had the right to make a sale, the plaintiff accepted the proposition.

Jennings at once notified the defendant that he had made this contract, and in reply received a letter from it, dated February 24, refusing at that time to ratify the sale for the reason that it had not satisfactory assurance of the financial standing of the plaintiff.  Jennings then procured from the plaintiff, an agreement to receive the steel upon bill of lading, with sight draft attached, which meant practically the payment of cash upon delivery.

Notwithstanding this, defendant refused to accept the order or deliver the steel in accordance therewith.  The defendant did not, however, communicate directly with the plaintiff at that time, but only through Mr. Jennings.  On or about March 11, a representative of the plaintiff company called upon the president of the defendant company and demanded delivery of the steel, at the same time tendering him the price thereof.  The delivery was, however, refused.  Whereupon the plaintiff sent in its specifications and continued to demand delivery which was wholly refused by the defendant.  The plaintiff was obliged to purchase steel elsewhere to fill in part, at least, existing contracts with its own customers, and it thereafter brought suit to recover the damages caused by the failure of the defendant to carry out the contract so made by Jennings, in its behalf.

Upon the trial, the court was of the opinion that the agreement of December 27, 1898, between the West Penn Sheet Steel Company and Benj. F. Jennings, did not authorize the making

of the contract of February 22, 1899, with the Pittsburg Sheet Manufacturing Company, unless it was afterwards accepted, or ratified, by the West Penn Sheet Steel Company, and that the contract between the West Penn Sheet Steel Company and Jennings only authorized him to secure orders, and did not authorize him to make sales. It, therefore, granted a compulsory nonsuit, and refused to take it off. This refusal is made the subject of the first assignment of error.

The question is, therefore, whether the court properly construed the contract of employment. Its provisions were substantially that Jennings should enter the service of the defendant and secure such orders as were suitable in character and size for its mill. That he was to sell to none except such as were in good standing, and that all sales made by him were to be in the name of the West Penn Sheet Steel Company. That in consideration of his services, Jennings was to be paid a commission on the gross amount of such sales; that settlements were to be made monthly for commissions on all orders that Jennings should secure; it also provided that the prices for which the steel should be sold should be carefully considered, and that the minimum or average selling price should be agreed to by the defendant.

We are clearly of the opinion that a proper construction of this contract of employment between the defendant company and Jennings did authorize him to make sales, and that he was not restricted to the mere taking of orders, and that the contract of February 22, 1899, made by him with the Pittsburg Sheet Manufacturing Company, was binding upon the defendant company which he represented. It is not pretended the order was not suitable in character and size for the defendant's mill. Any objection made to the financial ability of the purchaser seems to have been satisfactorily answered by the arrangement to pay cash on delivery. Neither does there seem to have been any complaint that the price at which the sale was made was not in accordance with the last previous instructions given by the defendant to Jennings. The sale appears to have been made in good faith and in the regular course of business.

Before accepting the proposition made by Jennings, the plaintiff made inquiry as to the authority of Jennings to make sales, and was shown the contract of employment between himself

and the defendant. This agreement conferred a general authority upon Jennings to take orders, and contained no express limitation that they should be subject to the ratification or approval of the defendant. If the defendant company had intended to prevent Jennings from making any binding agreement on its behalf without its approval, a provision to that effect could easily have been inserted in the contract of employment with him.

The case should not have been taken from the jury, but should have been submitted under careful instructions as to the proper measure of damages. The first assignment of error is sustained. Under this view, the second assignment need not be considered.

The judgment is, therefore, reversed and a procedendo awarded.